Mark D. Lurie (ML 6997)
Lurie Law Firm LLC
96 Park Street
Montclair, New Jersey 07042
(973) 509-0050
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------

NOEL THOMAS PATTON, ASIA BIOTECH CORP.    :   Civil Action No.
and TELOMERASE ACTIVATION SCIENCES, INC.,    :
    :
                        Plaintiffs    :
    :   **NOTICE OF REMOVAL**
v.    :
    :
BRIAN EGAN,    :
    :
                      Defendant    :

-------------------------------------------------------------------------

**TO:   THE HONORABLE JUDGES OF THE
       UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF NEW YORK**

      Defendant, Brian Egan ("Egan"), by and through his undersigned attorney, hereby

provides notice of his removal of this case, pursuant to 28 U.S.C. § 1441, from the Supreme

Court of the State of New York, County of New York, to this Court and respectfully states as his

grounds for said removal:

      1.     Plaintiffs commenced the current action on or about March 1, 2012, by filing a

Complaint in the Supreme Court of the State of New York, County of New York, entitled *Noel*

*Thomas Patton, Asia Biotech Corp. and Telomerase Activation Sciences, Inc. v. Brian Egan*,

Index No. 150442/12.  Said action is now pending in that Court.

      2.     Defendant was served with a copy of the Complaint on March 16, 2012.

3.      A copy of the Complaint is annexed hereto as Exhibit A.  It constitutes all of the processes and pleadings in this case to date.

4.      The above captioned action is a civil action that may be removed to this Court by Defendant because:

a.      <u>Diversity of the citizenship of the parties.</u>  Complete diversity of citizenship exists between Plaintiffs and the Defendant.  As set forth in the Complaint, and upon further information and belief, plaintiff Noel Thomas Patton is a citizen of the state of New York, plaintiff Asia Biotech Corp. is a corporation incorporated under the laws of the Cayman Islands, British West Indies, with an unknown principal place of business, plaintiff Telomerase Activation Services Inc. is a corporation incorporated under the laws of the State of Delaware with a principal place of business in New York, and defendant Brian Egan is a citizen of the State of New Jersey.

b.      <u>Amount in Controversy.</u>  As set forth in their Complaint, plaintiffs seek damages in excess of $2,000,000.

c.      <u>Agreement of the Parties.</u>  In support of their Complaint, plaintiffs attached a Confidential Disclosure Agreement, which provides *inter alia* that any action arising out of or relating to that agreement "shall be brought in the courts of record of the State of New York or the District Court of the United States, Southern District of New York."

d.      This Court accordingly has jurisdiction pursuant to 28 U.S.C. § 1332(a) and the Defendant is entitled to remove this case to this Court pursuant to 28 U.S.C. § 1441.

2

5.     This Notice of Removal is filed within the time provided by 28 U.S.C. §1446(b) and the Federal Rules of Civil Procedure.

6.     Defendant has not yet answered or otherwise replied to the Summons and Complaint filed in this action, nor has his time to respond expired.

7.     Upon filing of this Notice of Removal, Defendant shall given written notice thereof to Plaintiffs, through their counsel of record, Kenneth J. Katz, Kerr & Katz, 44 Wall Street, 12th Floor, New York, New York, 10005 and shall file copies of said Notice of Removal with the Supreme Court of the State of New York, County of New York.

8.     By filing this notice, Defendant does not waive, and expressly reserves, any defenses which may be available to him.

WHEREFORE, Defendant removes the above captioned action now pending against him in the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York, wherein it shall proceed as an action originally commenced therein.

Dated:  Montclair, New Jersey
March 30, 2012

Respectfully submitted,
**LURIE LAW FIRM LLC**

Mark D. Lurie
96 Park Street
Montclair, New Jersey  07042
Phone: (973) 509-0050
Fax: (973) 509-0054
mdlurie@lurielawfirm.com
Attorneys for Defendant

3

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 03/01/2012

NYSCEF DOC. NO. 1

INDEX NO. 150442/2012

RECEIVED NYSCEF: 03/01/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

Noel Thomas Patton, Asia Biotech Corp., and Telomerase
Activation Sciences, Inc.

Index No. 150442/12

**Plaintiffs**

**SUMMONS**

-against-

Brian Egan,

**Defendant.**

-------------------------------------------------------------------X

To the above-named Defendant:

You are hereby summoned and required to serve upon Plaintiffs' attorney an
answer to the complaint in this action within twenty days after the service of this
summons, exclusive of the day of service, or within thirty days after service is
complete if this summons is not personally delivered to you within the State of
New York. In case of your failure to answer, judgment will be taken against you by
default for the relief demanded in the complaint.

The basis of the venue designated is Plaintiffs' Residence.

Dated: New York, New York
       March 1, 2012

Kenneth J. Katz
Attorney for Plaintiffs
Kerr & Katz, LLP
44 Wall Street, 12th Floor
New York, New York, 10005
212.423.0305

Defendant's Address
Brian Egan
40 Cummings Way
Berkeley Heights, NJ 07922

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X
Noel Thomas Patton, Asia Biotech Corp., and Telomerase
Activation Sciences, Inc.

           Plaintiffs

      -against-

Brian Egan,

          Defendant.
----------------------------------------------------------------------X

Index No. *18 0442/12*

**VERIFIED
COMPLAINT**

   Plaintiffs, Noel Thomas Patton, Asia Biotech Corp., and Telomerase

Activation Sciences, Inc.  by their attorneys, Kerr & Katz, LLP, complaining of the

defendant, respectfully allege, upon information and belief as follows:

   1.  Noel Thomas Patton (Patton) is an individual residing in the state of

New York.

   2.  Asia Biotech Corp. (Asia Biotech) is a corporation incorporated under

the laws of the Cayman Islands, British West Indies.

   3.  Telomerase Activation Sciences, Inc. (TA Sciences) is a corporation

incorporated under the laws of the State of Delaware.

   4.  Brian Egan (Egan) is an individual residing in the state of New Jersey,

who at all relevant times transacted business in the state of New York.

   5.  Pursuant to a contract the Parties consent to the jurisdiction and venue

of this Court. (Exhibit 1)

## BACKGROUND FACTS

6.     On May 16, 2011 TA Sciences hired Egan as an independent contractor to provide consulting and sales services.

7.     In conjunction with providing services to TA Sciences, Egan signed a confidentiality and non-disclosure agreement, dated May 16, 2011 governing the disclosure of confidential documents and information (Confidential Information), with TA Sciences and Asia Biotech. (the NDA)(Exhibit 1).

8.     From May 16, 2011 to September 15, 2011 Egan provided services to TA Sciences and was provided access to certain Confidential Information.

9.     On September 15, 2011, TA Sciences notified Egan that his services were no longer required.

10.     On September 15, 2011, after he was terminated, Egan removed certain Confidential Information from TA Sciences' office.

11.     Later that night Egan wrote and sent an email to TA Sciences offices to the email accounts of Marty Choi and Dean Miller, both employees of TA Sciences. (September 15th Email)

12.     In the September 15th Email, Egan published the following;

> As I have always said, you certainly know Noel. I never realized just how much of a first class scumbag this guy is, plain and simple. From his infidelities, to his discriinatory (sic) actions against me today. I hope you and Marty leave this scumbag, you can do much better than working for this 'clown'. Yesterday I advised Noel

that i (sic) just found out tuesday (sic) from my urologist that I have prostate cancer. My doctor advised me to immediately stop taking TA 65. He "freaked out" telling me I had to keep this confidential from T A Sciences employees and customers, and was very concerned about the fact I am taking T A 65, and any association between my cancer and TA 65. He said a "cancer scare" could close the company. The piece of shit had no concern whatsoever for my health just any negatives for TA 65. I am convinced there is a connection, and he knows there is a connection based on his comments and actions. Plus the comments he made to us previously about closing the business if patients got cancer. Today at 4.30pm (sic) he meet (sic) with me and advised me he had to sever any business relationship with me because of my cancer, and offered me $50,000 if I would sign a confidentiality agreement about this matter....

13.   On September 19, 2011, Egan wrote and sent an email to Dr. Javier Moran (Moran), a business associate and potential customer of TA Sciences and Patton. (September 19th Email)

14.   In the September 19th Email, Egan published the following:

I can't come to Madrid, or to Paris now, since I was diagnosed with prostate cancer. I think it was caused by taking TA 65. When I disclosed this to the owner of the company, he fired me saying a 'cancer scare' related to TA 65 could bankrupt the company etc, (sic) and they could have no connection to me. Noel Patton is not what you and I would call an honest caring person. I wanted to speak with you to protect your interests.

15.   On September 22, 2011 TA Sciences delivered a letter to Egan by certified mail and federal express demanding that, within 20 days, he deliver all hard copies of Confidential Information, or provide a certification that all

Confidential Information in his possession has been delivered, to TA Sciences. (September 22nd Letter)

16.    Egan failed to deliver all Confidential Information, or provide a certification that all Confidential Information in his possession has been delivered, to TA Sciences.

17.    In the September 22nd Letter TA Sciences also demanded that Egan cease and desist from making further false, defamatory and disparaging statements about the company and its products.

18.    On September 23, 2011, after the September 22nd Letter was delivered, Egan, through his attorney, delivered to TA Sciences a letter, dated September 23, 2011, asserting baseless claims of discrimination and other unlawful actions by TA Sciences and Patton. (Demand Letter)

19.    On September 26, 2011, Egan wrote and delivered an email to Joseph Ferriera, a business associate of TA Sciences and Patton enclosing a copy of the Demand Letter which stated, in part, the following:

> [o]n or about September 13, 2011, Mr. Egan was diagnosed as having prostrate (sic) cancer. Mr. Egan's physician further directed him to immediately cease using TA-65, as this could have a detrimental impact on the progression of the cancer. The following day, Mr. Egan spoke with Patton by telephone, and advised him of his diagnosis. Patton angrily responded that Mr. Egan could not be affiliated with TA Science because, if knowledge of Mr. Egan's cancer became public, this could put the company out of business. On the next day,

September 15, 2011, Patton personally came to Mr. Egan's office. Patton reiterated that he could not afford to have the public know that one of its employees, who had religiously taken TA-65, had developed cancer and that Mr. Egan's doctor had noted that this product could have further negative impact on the progression of the disease. Patton co9ncluded (sic) by terminating Mr. Egan effective immediately. Mr. Egan's termination is a clear violation of both anti-discrimination and whistleblower laws. In addition, I note that, while TA Sciences immediately updated its website to remove any mention of Mr. Egan, it still falsely claims that 'TA-65® has been in use since 2005 with not one reported adverse event.'

## AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

20.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 19 of the Complaint as though fully set forth herein.

21.    The NDA defines Confidential Information to include certain documents and information, including but not limited to any information relating to "actual or potential ...customers ... of [TA Sciences and Asia Biotech]." (Exhibit 1)

22.    The purpose of the NDA was to allow TA Sciences and Asia Biotech to provide Confidential Information to Egan to enable him to effectively provide services to TA Sciences.

23.    Egan was allowed to use the Confidential Information solely for the purpose of rendering services to TA Sciences and Asia Biotech.

24.    Pursuant to the NDA, Egan was, and still is required to maintain the confidentiality of all Confidential Information for a period of seven years from May 16, 2011.

25.    The NDA requires Egan to deliver all hard copies of Confidential Information, or provide a certification that all Confidential Information in his possession has been delivered, to TA Sciences within twenty (20) days after he receives a written request from TA Sciences and Asia Biotech.

26.    By sending the September 22nd Letter, pursuant to the NDA, TA Sciences and Asia Biotech made a written request to Egan demanding that he deliver all hard copies of Confidential Information, or provide a certification that all Confidential Information in his possession has been delivered, to TA Sciences.

27.    Egan failing to comply with the demand set forth in the September 22nd Letter.

28.    Egan used the Confidential Information for reasons other than to provide services to TA Sciences.

29.    Egan breached the NDA by failing to deliver all hard copies of Confidential Information, or provide a certification that all Confidential Information in his possession has been delivered, to TA Sciences and by using the Confidential Information after September 15, 2011, after he was terminated for personal reasons and not to provide services to TA Sciences.

30.    As a result of Egan's breaches of the NDA, TA Sciences and Asia Biotech have sustained damages.

31.    Judgment should be entered in favor of TA Sciences and Asia Biotech and against Egan for an amount to be determined but in excess of the jurisdictional minimum plus all costs, attorney fees and injunctive relief allowed under the terms of the NDA, including the delivery of the Confidential Information in Egan's possession.

## AS AND FOR A SECOND CAUSE OF ACTION FOR LIBEL

32.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 31 of the Complaint as though fully set forth herein.

33.    The September 15th Email, the September 19th Email and the September 26th Email (the Publications), written by Egan, are false and defamatory statements of fact.

34.    Plaintiffs are the subject of the Publications.

35.    The Publications were intentionally, negligently or recklessly published to third-parties without authorization from Plaintiffs.

36.    Upon information and belief Egan has written other statements that are false and defamatory statements of fact, of which the Plaintiffs are the subject, and which were intentionally, negligently or recklessly published to third-parties without authorization from Plaintiffs.

37.     Based upon the foregoing and as a direct and proximate result thereof, Plaintiffs' reputation and integrity have been damaged in an amount in excess of $2,000,000.00.

38.     As a result of Egan's aforementioned wanton and malicious acts, Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

## AS AND FOR A THIRD CAUSE OF ACTION FOR LIBEL PER SE

39.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40.     The Publications and other written statements are on their face, publications that tend to injury Plaintiffs' in their business, professional and trade.

41.     The Publications and other written statements are on their face, publications that charge Plaintiffs with a serious crime.

42.     As a result thereof, it is a natural and proximate consequence that this publication necessarily will and did cause injury to the Plaintiffs *per se*.

43.     As a result of Egan's aforementioned wanton and malicious acts, Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

44.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 43 of the Complaint as though fully set forth herein.

45.    Egan was aware that Moran was a prospective business partner of Plaintiffs.

46.    Prior to his termination, Egan was scheduled to travel to Europe, on behalf of Plaintiffs, to meet with Moran in an attempt to finalize an arrangement for Moran to provide consulting and broker services for Plaintiffs.

47.    Moran told Plaintiffs that, for a finder's fee and other consulting fees, he could introduce Plaintiffs to numerous clients which would help them develop and cultivate a large network of customers in South America.

48.    Egan told Plaintiffs that Moran could introduce Plaintiffs to numerous clients which would result in sales in excess of $2,000,000.00.

49.    After his termination, Egan wrote and delivered the September 19th Email which is a false and defamatory statement of fact regarding Plaintiffs.

50.    The September 19th Email was sent solely to harm Plaintiffs and their business relationships with Moran.

51.    Egan interfered with Plaintiffs' relationship with Moran by wrongful means, including making false and defamatory publications and statements.

52.     Specifically, Egan interfered with Plaintiffs' relationship with Moran by writing and delivering the libelous September 19th Email.

53.     Egan interfered with Plaintiffs' relationship with Moran solely to harm Plaintiffs.

54.     As a result of the September 19th Email and Egan's actions, Moran ended his prospective business relationship with Plaintiffs.

55.     Upon information and belief, Egan has interfered with other potential customers and business associates of Plaintiffs, including but not limited to Troy Ware, by wrongful means, solely to harm Plaintiffs.

56.     Based upon the foregoing and as a direct and proximate result thereof, Plaintiffs were damaged in an amount in excess of $2,000,000.00.

57.     As a result of Egan's aforementioned acts, judgment should be entered in favor of Plaintiffs and against Egan in an amount not less than $2,000,000.00.

WHEREFORE, Plaintiffs are entitled to judgment as follows:

   a) On the First Cause of Action in favor of TA Sciences and Asia Biotech and against Egan for an amount to be determined but in excess of the jurisdictional minimum plus all costs, attorney fees and injunctive relief allowed under the terms of the NDA,

including the delivery of the Confidential Information in Egan's possession, and

b) On the Second Cause of Action in favor of Plaintiffs and against Egan for all damages incurred, including but not limited to exemplary and punitive damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court, and

c) On the Third Cause of Action in favor of Plaintiffs and against Egan for all damages incurred, including but not limited to exemplary and punitive damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court, and

d) On the Fourth Cause of Action in favor Plaintiffs and against Egan in an amount not less than $2,000,000.00, and

e) interest, and

f) costs and disbursements, and

g) such other and further relief as is proper.

Dated:       New York, New York
             March 1, 2012

                                    Kenneth J. Katz
                                    Attorney for Plaintiffs
                                    Kerr & Katz, LLP
                                    44 Wall Street, 12th Floor
                                    New York, New York, 10005
                                    212.423.0305

### Asia Biotech Corp.
### TA Sciences, Inc.
### Confidential Disclosure Agreement

This confidentiality and non-disclosure agreement (herein below referred to as the or this "Agreement") is made this 16th day of May, 2011, by and between Asia Biotech Corp., a corporation organized under the laws of the Cayman Islands, British West Indies, and its affiliate, TA Sciences, Inc., a corporation organized under the laws of the State of New York, (herein below jointly referred to as the "Disclosing Party"), and Brian Egan, resides at 40 Cummings Way, Berkeley Heights, NJ 07922, (herein below referred to as the "Recipient"), and is effective as of the date set forth above.  The parties acknowledge the following facts:

The Disclosing Party, through its assignor Asia Biotech Company Limited, rightfully has knowledge of certain information that is proprietary to Geron Corporation, a Delaware corporation having a business address at 230 Constitution Drive, Menlo Park, CA 94025, ("Geron") which information was disclosed to the Disclosing Party pursuant to the terms and conditions of that certain Commercial License Agreement entered into by and between Asia Biotech Company Limited and Geron on September 30, 2002 (the "License") and subsequently assigned to Asia Biotech Corp.  The Disclosing Party has limited rights, pursuant to the terms and conditions of the License, to disclose such information to persons who satisfy certain criteria, to enable the Disclosing Party to satisfy obligations or exercise rights under the License; and

The Recipient desires, as part of its  evaluation (the "Evaluation") concerning the possible rendering of services or provision of materials by the Recipient to the Disclosing Party, to become familiarized with certain technology, processes, know-how, and the like developed by, owned by, or licensed to the Disclosing Party, and certain information regarding the business and potential business of the Disclosing Party, and in order to do so, the Disclosing Party must disclose to the Recipient confidential and proprietary information regarding such technology, etc., and business.

In consideration of the above premises and the covenants herein below set forth and in consideration of the disclosure of confidential information and trade secrets (as those terms are herein below defined) and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1.   Whenever used in this Agreement, the following terms shall have the meanings set forth below:

   (a) "Affiliates" shall mean any corporation, firm, partnership and other entity, which directly or indirectly controls, is controlled by, or is under common control with any of the parties.
   (b) "Confidential Information" shall mean any and all data and information furnished by the Disclosing Party or its representatives to the Recipient or its representatives including, but not limited to:

(i)    Any memoranda, plans, notes, records, surveys, reports, computations, renderings, models, sketches, diagrams, drawings, research and development data, test data, or other items relating to products, services, systems, processes, or technology (collectively, "Products") or concepts for Products of the Disclosing Party which are or have been disclosed to the Recipient, or of which the Recipient became aware as a consequence of or through the Evaluation.

(ii)   Any memoranda, plans, notes, records, surveys, reports, computations, renderings, models, sketches, diagrams, drawings, research and development data, test data, or other items relating to Products or concepts for Products of the Disclosing Party which have value to the Disclosing Party and are not generally known by competitors or potential competitors of the Disclosing Party;

(iii)  Any information relating to the actual or potential Products, financial affairs, patients, customers, suppliers, employees, employees' compensation, research, development, inventions, patents, manufacturing, purchasing, accounting, engineering, distribution system, or marketing of the Disclosing Party.

(iv)  Written Confidential Information shall be marked as confidential. Confidential Information shall include non-written disclosures of proprietary information that are identified by the disclosing party as confidential, or that the receiving party understands, or should reasonably understand, is confidential.

Confidential Information shall not include any data or information that:

(i)    has been voluntarily disclosed to the public by the Disclosing Party or has become generally known to the public (except where such public disclosure has been made or such knowledge has been gained by or through the Recipient, or by a third person or entity with the knowledge of the Recipient, without authorization by the Disclosing Party); or

(ii)   has been independently developed and disclosed by parties other than the parties hereto to the public generally or to the Recipient without a breach by any such parties of any obligation of confidentiality running directly or indirectly to the Disclosing Party.

(c)  "Invention" shall mean any useful process, know-how, machine, composition of matter, algorithm, work of authorship, design, formulation, or other device or composition which is new, or which the Recipient has a reasonable basis to believe may be new, whether or not patentable.

(d)  "Trade Secrets" shall mean:

(i) any Invention which is being used, studied, or manufactured by the Disclosing Party and is not described in an issued patent or described in any literature already published and distributed externally by the Disclosing Party;

(ii) any engineering, design, technical, or product specifications including those of features currently used, to be used, or the use of which is contemplated in a current or future Product of the Disclosing Party;

(iii) any machine, device, know-how, process, procedure or method of manufacturing employed by or proposed to be employed by the Disclosing Party, whether patentable or not, which is not generally known to or employed by competitors, or potential competitors of the Disclosing Party.

"Trade Secrets" includes information disclosed to the Disclosing Party by Geron pursuant to the License, which the Disclosing Party reasonably believes needs be disclosed to Recipient.

"Trade Secrets" shall not include any data or information that:

(i) has been voluntarily disclosed to the public by the Disclosing Party or that has become generally known to the public (except when such public disclosure has been made by or through the Recipient, or by a third person or entity with the knowledge of the Recipient, without authorization from the Disclosing Party); or

(ii) has been independently developed and disclosed by parties other than the parties hereto to the public generally or to the Recipient without a breach by any such parties of any obligation of confidentiality running directly or indirectly to the Disclosing Party.

(e) "Person" shall be broadly interpreted to include, without limitation, any corporation, company, partnership, individual, trust, estate, governmental body or agency, or other entity.

(f) "Representative" shall include, without limitation, any related corporation and its officers, directors, agents, or employees, all accountants, bankers, lawyers, investment bankers, advisors, and others with whom either party hereto or any of its representatives consult in regard to the Evaluation.

2.   The Recipient or its Representatives will receive the Trade Secrets and Confidential Information (collectively, the "Proprietary Information") of the Disclosing Party and (a) will take all action necessary to prevent such Proprietary Information from losing its character as such and (b) will not use, or permit any Representative to use, duplicate, reproduce, distribute, disclose or otherwise disseminate the Proprietary Information for any purpose other than the Evaluation.

3.   Notwithstanding any other provision of this Agreement, disclosure of Proprietary Information shall not be prohibited to the extent required to comply with applicable laws

or regulations, or with a valid court or administrative order, provided that the Recipient: (a) promptly notifies the disclosing party in writing of the existence, terms and circumstances of such required disclosure; (b) consults with that Disclosing Party on the advisability of taking legally available steps to resist or narrow such disclosure; and (c) takes all reasonable and lawful actions to obtain confidential treatment for such disclosure.

4.    The Recipient agrees that all Proprietary Information is owned or controlled by the Disclosing Party and that the Disclosing Party owns or controls all patents, copyrights, and other proprietary rights in connection therewith, and no license is granted to the Recipient hereby. Specifically, Recipient acknowledges and agrees that the Disclosing Party owns or controls the Trade Secrets and further that the Trade Secrets are a valuable property of the Disclosing Party and qualify as trade secrets within the meaning of the Uniform Trade Secrets Act. In particular, Recipient acknowledges and agrees that the Trade Secrets are subject to a higher obligation of confidentiality and care than other Proprietary Information, and that the Disclosing Party will be damaged in an amount indeterminable, as of the effective date of this Agreement, by any disclosure or use of the Trade Secrets not expressly permitted hereby.

5.    Within twenty (20) days following the receipt of a written request from the Disclosing Party, the Recipient will deliver to the Disclosing Party all tangible materials containing or embodying the Proprietary Information received by it from the Disclosing Party, including all copies thereof, together with a certificate executed by the president, director, or any vice president of the Recipient, certifying that all such materials in the Recipient's possession have been delivered to the Disclosing Party.

6.    This Agreement shall terminate two (2) years after the date hereof. (the Term") The covenants of confidentiality contained herein (a) shall apply after the effective date hereof to any Proprietary Information disclosed by the Disclosing Party to the Recipient prior to or after the effective date hereof; and (b) shall continue and be maintained by the parties (i) with respect to Confidential Information for a period of five (5) years after expiration of the Term; and (ii) with respect to Trade Secrets, at any and all times after the date hereof.

7.    If the Recipient shall breach or threaten to breach any of the provisions of this Agreement, the Disclosing Party, in addition to any other remedies it may have at law or in equity, will be entitled to a restraining order, injunction, or other similar remedy in order to specifically enforce the provisions of this Agreement. The Recipient specifically acknowledges that money damages alone would be inadequate remedy for the injuries and damage which would be suffered and incurred by the Disclosing Party as a result of a breach of any of the provisions of this Agreement. In the event that the Disclosing Party seeks an injunction hereunder, the Recipient hereby waives any requirement for the posting of a bond or any other security. If the Disclosing Party seeks to enforce its rights hereunder and is successful in obtaining court-ordered remedies, including but not limited to injunctive relief, the Recipient shall reimburse to the Disclosing Party all of the

Disclosing Party's legal expenses incurred in seeking such remedies, including attorneys' fees and costs of litigation.

8.   The Recipient acknowledges that (a) the Proprietary Information of the Disclosing Party is unique and valuable and has been and will be created, discovered, developed or otherwise acquired as a result of substantial effort and expense; (b) the Disclosing Party has a legitimate business interest in restricting the disclosures of its Proprietary Information; and (c) the provisions of this Agreement are reasonable and necessary to protect the legitimate interests of the Disclosing Party and will not unduly burden the Recipient.

9.   All notices and other communications permitted or required by the provisions of this Agreement shall be in writing and shall be personally delivered or deposited in a lawful mail depository in either the country of residence of the party receiving the notice, designated as registered or certified mail, return receipt requested (or the nearest functional equivalent thereto outside the United States), bearing adequate first class postage and addressed as hereinafter provided.   Notices delivered in person shall be effective upon the date of delivery.   Notices by mail shall be effective upon the receipt thereof by the addressee or upon the tenth (10th) calendar day subsequent to the postmark date, whichever is earlier.  Rejection of or the refusal to accept the notice, or the inability to deliver it because of a change in the address of which no notice was given as provided herein shall be deemed to be receipt of the notice sent as of the tenth (10th) calendar day subsequent to the postmark date.  By giving to the other party thereto at least thirty (30) days' notice thereof, each party hereto shall have the right from time to time and at any time while this Agreement is in effect to change its respective address, and each shall have the right to specify as its new address, any other address.   Any notice herein required or permitted to be given may be given, in addition to the manner set forth above, by telex, facsimile, or e-mail, provided that the party giving such notice obtains acknowledgment by telex, facsimile, or e-mail that such notice has been received by the party to be notified.  Notice given in this manner shall be effective upon transmission of acknowledgment of receipt thereof by the party to be notified.   Each notice to the Disclosing Party and the Recipient shall be addressed, until notice of change as aforesaid, as follows:

(a)   If intended for the Disclosing Party, to:

1)  Noel Thomas Patton, Chairman
    Asia Biotech Corp.
    1602 deRicou Tower
    109 Repulse Bay Road
    Hong Kong, China

    Fax: (852) 2813-1899
    E-mail: NTPHK@aol.com
    AND

Page 5 of 7

2) Noel Thomas Patton, Chairman
   TA Sciences, Inc.
   24 East 64th Street
   New York, NY 10065

   Fax: (212) 588-0058
   E-mail: ntp@tasciences.com

(b)       If intended for the Recipient, to:

          Brian Egan
          40 Cummings Way
          Berkeley Heights, NJ 07922
          Phone:  908-665-0113
          Email: began2000@aol.com

10.   This Agreement shall be governed and construed as to both substantive and procedural matters in accordance with the laws of the State of New York.  Each of the parties irrevocably and unconditionally (a) agrees that any suit, action, or legal proceeding arising out of or relating to this Agreement shall be brought in the courts of record of the State of New York or the District Court of the United States, Southern District of New York; (b) consents to the *in personam* and *in rem* jurisdiction of each such court in any suit, action or proceeding; (c) waives any objection which any such party may have to the laying of venue of any suit, action or proceeding in any of such courts; and (d) agrees that service of any court paper may be effected on such party by mail, as provided in this Agreement, or in such other manner as may be provided under applicable laws or court rules in New Jersey.

11.   In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalid, illegal, or unenforceable provisions shall be modified or deleted in such a manner as to make this Agreement, as modified, legal and enforceable to the fullest extent permitted under applicable law.

12.   No failure of any party hereto to exercise any power given under this Agreement or to insist upon strict compliance with any obligations specified in this Agreement and no custom or practice at variance with the terms of this Agreement shall constitute a waiver of any of the parties' rights to demand exact compliance with the terms of this Agreement.  No waiver or alleged waiver shall be effective unless signed in writing and signed by the party against whom such waiver is sought to be enforced.

13.   This agreement may not be assigned by any party without the prior written consent of the other party; provided, however, that without the prior consent of the other party (i) a

party hereto may assign this agreement to a successor-in-interest to the party's business relating to this Agreement and (ii) a party may assign this Agreement to an Affiliate.

THE DISCLOSING PARTY:

ASIA BIOTECH CORP.

By _____    6/23/2011
   Noel Thomas Patton, Chairman

TA SCIENCES, INC.

By _____
   Noel Thomas Patton, Chairman

THE RECIPIENT:

_____
Brian Egan

## <u>VERIFICATION</u>

STATE OF NEW YORK      )
                                )     ss.:
COUNTY OF NEW YORK     )

Noel Thomas Patton, being duly sworn, deposes and says:

1.     I am the one of the plaintiffs and president of plaintiffs, Telomerase Activation Sciences, Inc., and Asia Biotech Corp. in this matter and familiar with the facts and circumstances of this matter.

2.     I have read the annexed Verified Complaint, know the contents thereof, based on my personal knowledge and review of Plaintiffs' books and records, and the contents of the Verified Complaint are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.


_____

Noel Thomas Patton


Sworn to before me this
21st day of February, 2012

_____
Notary Public


KENNETH KATZ
Notary Public, State of New York
No. 30-02KA6109827
Qualified in Nassau County
My Commission Expires May 24, 20__