Mark D. Lurie (ML 6997)
Lurie Law Firm LLC
96 Park Street
Montclair, New Jersey 07042
(973) 509-0050
Attorneys for Defendant, Plaintiff in Counterclaim and Third Party Plaintiff, Brian Egan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

| | | |
|---|---|---|
| NOEL THOMAS PATTON, ASIA BIOTECH CORP and TELOMERASE ACTIVATION SCIENCES, INC., | : | *ECF CASE/Document Electronically Filed* |
| | : | |
| | : | No. 1:12-CV-02500-VM |
| | : | |
| | : | |
| Plaintiffs and Defendants | : | **FIRST AMENDED ANSWER,** |
| in Counterclaim | : | **COUNTER-CLAIMS AND** |
| v. | : | **THIRD PARTY CLAIM** |
| | : | |
| BRIAN EGAN, | : | |
| | : | |
| Defendant, Plaintiff in Counterclaims | : | |
| and Third Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| WEIMAN LIU, | : | |
| | : | |
| Third Party Defendant | : | |

----------------------------------------------------------------

Defendant, Brian Egan ("Egan" or "Defendant"), by and through his attorney, hereby

answers the Complaint as follows:

1. Defendant admits the allegations contained in Paragraph 1.

2. Defendant admits the allegations contained in Paragraph 2.

3. Defendant admits the allegations contained in Paragraph 3.

4. Defendant admits the allegations contained in Paragraph 4.

5.  In response to the allegations contained in Paragraph 5, defendant states that the document attached as Exhibit 1 to the Complaint speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 5, and leaves plaintiffs to their proofs.

## BACKGROUND FACTS

6.  Defendant denies the allegations contained in Paragraph 6.

7.  In response to the allegations contained in Paragraph 7, defendant states that the document attached as Exhibit 1 to the Complaint speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 5, and leaves plaintiffs to their proofs.

8.  Defendant admits that he was employed by plaintiffs from May 16, 2011to September 15, 2011. Plaintiffs' allegations regarding "certain Confidential Information" is vague and ambiguous, and defendant therefore denies such allegations. To the extent not explicitly admitted, defendant denies the remaining allegations contained in Paragraph 8.

9.  Defendant admits that plaintiffs notified him that his employment was terminated on September 15, 2011. Defendant denies the remaining allegations contained in Paragraph 9.

10.  Defendant denies the allegations contained in Paragraph 10.

11.  Defendant admits the allegations contained in Paragraph 11.

12.  In response to the allegations contained in Paragraph 12, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 12, and leaves plaintiffs to their proofs.

13.  Defendant admits the allegations contained in Paragraph 13.

14.  In response to the allegations contained in Paragraph 14, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 14, and leaves plaintiffs to their proofs.

15.  Defendant admits that TA Sciences sent a letter to him on September 22, 2011, which speaks for itself, and therefore neither denies nor admits the remainder of the allegations contained in paragraph 12, and leaves plaintiffs to their proofs.

16.  Defendant denies the allegations contained in Paragraph 16.

17.  In response to the allegations contained in Paragraph 17, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 17, and leaves plaintiffs to their proofs.

18.  Defendant denies the allegations contained in Paragraph 18.

19.  In response to the allegations contained in Paragraph 19, defendant states that the alleged e-mail speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 17, and leaves plaintiffs to their proofs.

**FIRST CAUSE OF ACTION**

20.  In response to Paragraph 20, defendant repeats his prior answers as if fully set forth herein.

21.  In response to the allegations contained in Paragraph 21, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 21, and leaves plaintiffs to their proofs.

22.  Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22, and therefore denies such allegations, and leaves plaintiff to their proofs.

23.  Defendant denies the allegations contained in paragraph 23.

24.  In response to the allegations contained in Paragraph 24, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 24, and leaves plaintiffs to their proofs.

25.  In response to the allegations contained in Paragraph 25, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 25, and leaves plaintiffs to their proofs.

26.  In response to the allegations contained in Paragraph 26, defendant states that the alleged document speaks for itself, and therefore neither denies nor admits the allegations contained in paragraph 26, and leaves plaintiffs to their proofs.

27.  The allegations contained within paragraph 27 are vague, and do not constitute a complete sentence.  To the extent that plaintiffs allege that defendant failed to comply with their September 22 letter, defendant denies the allegation.

28.  Defendant denies the allegations contained in paragraph 28.

29.  Defendant denies the allegations contained in paragraph 29.

30.  Defendant denies the allegations contained in paragraph 30.

31.  Defendant denies the allegations contained in paragraph 31.

## SECOND CAUSE OF ACTION

32.  In response to Paragraph 32, defendant repeats his prior answers as if fully set forth herein.

33.  Defendant denies the allegations contained in paragraph 33.

34.  In response to the allegations contained in Paragraph 34, defendant states that the alleged documents speaks for themselves, and therefore neither denies nor admits the allegations contained in paragraph 34, and leaves plaintiffs to their proofs.

35.  Defendant denies the allegations contained in paragraph 35.

36.  Defendant denies the allegations contained in paragraph 36.

37.  Defendant denies the allegations contained in paragraph 37.

38.  Defendant denies the allegations contained in paragraph 38.

## THIRD CAUSE OF ACTION

39.  In response to Paragraph 39, defendant repeats his prior answers as if fully set forth herein.

40.  Defendant denies the allegations contained in paragraph 40.

41.  Defendant denies the allegations contained in paragraph 41.

42.  Defendant denies the allegations contained in paragraph 42.

43.  Defendant denies the allegations contained in paragraph 43.

## FOURTH CAUSE OF ACTION

44.  In response to Paragraph 44, defendant repeats his prior answers as if fully set forth herein.

45.  Defendant denies the allegations contained in paragraph 45.

46.  Defendant denies the allegations contained in paragraph 46.

47.  Defendant admits that Moran advised that, for a fee, he could introduce Plaintiffs to clients who could help develop and cultivate a network of potential customers in South America, but that Plaintiffs had rejected Moran's offer.  Defendant denies the allegations contained in paragraph 47.

48.  Defendant denies the allegations contained in paragraph 48.

49.  Defendant denies the allegations contained in paragraph 49

50.  Defendant denies the allegations contained in paragraph 50.

51. Defendant denies the allegations contained in paragraph 51.

52. Defendant denies the allegations contained in paragraph 52.

53. Defendant denies the allegations contained in paragraph 53.

54. Defendant denies the allegations contained in paragraph 54.

55. Defendant denies the allegations contained in paragraph 55.

56. Defendant denies the allegations contained in paragraph 56.

57. Defendant denies the allegations contained in paragraph 57.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails, in whole or in part, to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which an award of punitive damages may be granted.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by their own contributory and/or comparative fault.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by their own misconduct.

## SIXTH AFFIRMATIVE DEFENSE

Defendant's alleged conduct was not the proximate or actual cause of any damages alleged by plaintiffs.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged defamatory statements were not published.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged defamatory statements were privileged.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged defamatory statements were true.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged defamatory statements were statements of opinion.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged defamatory statements did not result in any special damage to plaintiffs.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged defamatory statements were not uttered maliciously.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because defendant did not maliciously or intentionally interfere with any purported economic advantage.

## DEFENDANT'S COUNTERCLAIMS AND THIRD PARTY COMPLAINT

Defendant, Brian Egan, by way of Counterclaim against plaintiffs and by way of Third Party Complaint against Weiman Liu ("Liu"), alleges as follows:

1.      Egan commenced his employment with TA Sciences ("TA Sciences") in April 2011, earning $150,000 plus bonus potential.

2.      Throughout his employment, Egan's work was exemplary, and he received no negative comments or criticisms.

3.      TA Sciences' founder and CEO, Noel Patton ("Patton"), insisted that all of its employees over 40, including Egan, take TA-65 capsules per day, which TA Sciences has claimed is efficacious for improving immune system function, vision improvement, sexual enhancement and other functions in adults in their 40s or 50s.

4.      Prior to taking TA-65, Patton and TA Sciences insisted that Egan receive a full physical, including extensive blood tests, with Dr. Joseph M. Raffaele, who is affiliated with TA Sciences, and whose medical practice, PhysioAge Medical Group, acts as the New York City clinical arm of TA Sciences.

5.      The physical examination, which lasted for approximately 3 hours and included the taking and testing several vials of blood, indicated that Egan was healthy, with no sign of cancer and he was given a clean bill of health to take TA 65.

6.      In accordance with Patton's direction, Egan then started taking took 2 capsules (500 units) of TA-65 per day, which continued until just immediately before the termination of his employment.

7.      Both before and during Egan's employment, Patton, TA Sciences and Asia Biotech, had indications that TA-65 could cause cancer.

8.      Patton, TA Sciences and Asia Biotech were concerned that, if TA65 were linked to cancer, this would be devastating for their business.

9.      For example, while certain TA Sciences employees were responsible for routine processing and responding to complaints and inquiries regarding TA-65, Patton and TA Sciences instructed these employees that, if they received any calls, inquiries or complaints regarding the relationship between TA-65 and cancer, they should not do anything regarding such calls but should, instead, forward them immediately to TA Sciences' second highest ranking officer, Weimin Liu, who reviewed them with Patton and kept these records confidential from all other employees.

10.     Upon information and belief, Liu kept a log book of all such complaints and inquiries.  Unlike all other medical conditions and adverse events (which must be reported to the FDA), upon information and belief, TA Sciences never reported or published any adverse events, complaints or issues regarding cancer in individuals using TA-65, even though it had knowledge of such adverse events, complaints and issues and was required to report them.  Nor did Patton, TA Sciences, Asia Biotech or Liu report such issues to the licensor of TA-65, Geron Corporation, even though it was required by the license agreement.  Further, TA Sciences did not keep records for all shipments of TA 65.

11.     On or about September 13, 2011, Egan was diagnosed as having prostate cancer by way of a telephone call with his doctor.  Egan then met with his doctor in person the following morning to further discuss the diagnosis and options further.

12.      Egan's physician further directed him to immediately cease using TA-65, as this could have a detrimental impact on the progression of the cancer.

9

13.     On September 14, following his meeting with his doctor, Egan spoke with Patton by telephone, and advised him of his diagnosis.

14.     Patton angrily responded that Egan should not discuss his condition with any employees or anyone outside the company, and that he would meet with Egan the following day.

15.     On the next day, September 15, 2011, Patton personally came to Egan's office.

16.     Patton stated that he could not afford to have the public know that one of its employees, who had religiously taken TA-65, had developed cancer and that Egan's doctor had noted that this product could have further negative impact on the progression of the disease.

17.     Patton concluded by terminating Egan effective immediately, and offered him $50,000 if he would sign a confidentiality agreement and not disclose his cancer to the public.

18.     Recognizing that his actions were unjustifiable, upon information and belief Patton then called a meeting of Egan's co-workers, including Angela Alvarado and Clarissa Versteegh and falsely and maliciously told them that Egan had physically assaulted him, and that he terminated Egan's employment.

19.     Within one day after Egan's termination, Patton sent an e-mail to Egan's co-workers, falsely and maliciously stating that Egan had "actually physically assaulted me [Patton]", falsely claiming that Patton had notified the police so that they would "take the necessary steps to protect me [Patton] and the company from any further damage, " thereby falsely conveying that Egan had somehow already damaged Patton and the company, and further advising Egan's co-workers that they should not have any contact with Egan "unless a lawyer or law enforcement officer is present," implying that Egan is prone to violence and would attack his colleagues. Upon information and belief, Patton also attempted to continue to hide the fact that

there might be a link between cancer and TA 65, by telling employees not to have any further communication with Egan.

20.     Also within a day after Egan's termination, Liu, at Patton's direction and in collusion to cover up the discriminatory termination, also sent an e-mail to Egan's colleagues, falsely and maliciously asserting that Patton and TA Sciences terminated Egan's employment for performance related issues, including defaming Egan's business skills and knowledge, claiming that "Brian doesn't understand our business after 4 months with the company," falsely stating that Egan's fist touched Patton, and falsely claiming that Egan made up a story that he had cancer in order to get money from the company, even though Liu was not present during the termination meeting.

21.     Further, on or about September 23, 2011, TA Sciences contacted Dr. Raffaele, and improperly obtained Egan's medical records, without his knowledge or consent, in violation of the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 CFR 164 upon receiving Egan's demand letter on September 23, 2011.

22.     Even though Patton, TA Sciences and Asia Biotech were on notice as of September 14, 2011 that Egan had prostate cancer, and asserted that his cancer was caused by TA-65, they continued to falsely and fraudulently claim to the public as of the date of June 6, 2012  that there were no complaints tying their product with cancer, recognizing and tacitly acknowledging that this information could be fatal to their business.

23.     Patton, TA Sciences and Asia Biotech similarly failed to disclose to the federal Food and Drug Administration that Egan, and others, notified the company that there might be a connection between TA-65 and cancer.

## FIRST CAUSE OF ACTION
### (New York State Human Rights Law)

24.     Egan hereby incorporates by referenced the allegations contained in paragraph 1-23 of the Counterclaim and Third Party Complaint as if set forth at length herein.

25.     Egan was an employee of TA Sciences and/or Asia Biotech under the New York Human Rights Law.

26.     During the course of his employment, Egan had a disability (prostate cancer), as defined by the New York Human Rights Law.

27.      Just one day prior to his termination, Egan notified Patton, TA Sciences and Asia Biotech of his disability.

28.     Patton, TA Sciences and/or Asia Biotech discriminated against Egan by terminating his employment due to his disability, in violation of the New York State Human Rights Law.

29.     As a direct and proximate result of illegal discrimination, Egan has suffered, and will continue to suffer, damages, including but not limited to physical and emotional damages, economic harm, stress, medical bills, damage to his reputation as well as disruption in his professional and personal life.

30.     Patton, TA Sciences and Asia Biotech's actions have been extreme and outrageous, and were actuated by actual malice and/or wanton and willful disregard for Egan and for laws, regulations, public policy and public health and safety.

WHEREFORE, Egan demands judgment against Patton, TA Sciences and Asia Biotech, jointly and severally, for damages, including back pay, front pay, compensatory damages,

counsel fees, pre-judgment and post-judgment interest, Court costs and fees, and such other relief

as the Court may deem just and appropriate under the circumstances.

## SECOND CAUSE OF ACTION
### (New York City Administrative Code)

31.     Egan hereby incorporates by referenced the allegations contained in paragraph 1-

30 of the Counterclaim and Third Party Complaint as if set forth at length herein.

32.     Egan was an employee of TA Sciences and/or Asia Biotech under the New York

City Administrative Code, Chapter 8-107 et seq.

33.     During the course of his employment, Egan had a disability (prostate cancer), as

defined by the New York City Administrative Code.

34.     Immediately prior to his termination, Egan notified Patton, TA Sciences and Asia

Biotech of his disability.

35.     Patton, TA Sciences and/or Asia Biotech discriminated against Egan by

terminating his employment due to his disability, in violation of the New York City

Administrative Code.

36.     As a direct and proximate result of illegal discrimination, Egan has suffered, and

will continue to suffer, damages, including but not limited to physical and emotional damages,

economic harm, stress, medical bills, damage to his reputation as well as disruption in his

professional and personal life.

37.     Patton, TA Sciences and Asia Biotech's actions have been extreme and

outrageous, and were actuated by actual malice and/or wanton and willful disregard for Egan and

for laws, regulations, public policy and public health and safety.

WHEREFORE, Egan demands judgment against Patton, TA Sciences and Asia Biotech, jointly and severally, for damages, including back pay, front pay, compensatory and punitive damages, counsel fees, pre-judgment and post-judgment interest, Court costs and fees, and such other relief as the Court may deem just and appropriate under the circumstances.

## THIRDCAUSE OF ACTION
### (Defamation)

38.     Egan hereby incorporates by referenced the allegations contained in paragraph 1-37 of the Counterclaim and Third Party Complaint as if set forth at length herein.

39.     Patton, TA Sciences, Asia Biotech and Liu published knowingly false and malicious statements to Egan's co-workers, including false allegations that he engaged in physical violence against Patton.

40.     These statements were intentionally, knowingly, negligently and/or recklessly published to third parties without Egan's authorization.

41.     These statements were made intentionally in order to damage Egan and his reputation.

42.     As a direct and foreseeable result of these publications, Egan has been damaged.

43.     These statements were wanton and malicious falsehoods, for which Egan is entitled to exemplary and punitive damages.

WHEREFORE, Egan demands judgment against Patton, TA Sciences, Asia Biotech and Liu, jointly and severally, for damages, Court costs and fees, and such other relief as the Court may deem just and appropriate under the circumstances.

14

## JURY DEMAND

Egan hereby demands a trial by jury on all issues herein.


Dated:  Montclair, New Jersey
June 6, 2012

Respectfully submitted,
**LURIE LAW FIRM LLC**


By:   s/Mark D. Lurie
Mark D. Lurie
96 Park Street
Montclair, New Jersey  07042
Phone: (973) 509-0050
Fax: (973) 509-0054
mdlurie@lurielawfirm.com
Attorneys for Defendant and
  Plaintiff in Counterclaim and Third Party Plaintiff,
  Brian Egan